For the 7th Judicial Circle, herein, herein, herein, all persons having business before this Honorable Court are appointed to draw near and keep their attention as the Court is now sitting. God save the United States and this Honorable Court. I'm here, but I don't see me. We don't see you either, but we hear you loud and clear. I should have put more makeup on. Let's see if we can get me. I don't know. Good morning, Judge Rovner. We see you now and we hear you. Good morning, everyone. Good morning. All right, we are gathered here today to work through five cases with you together. We call case number one, appeal number 25-15-16 Putnam v. Caramelcrisp, LLC, and we welcome to the podium Mr. Ossoni. You may begin when you're ready. Good morning, Your Honors, and may it please the Court. My name is Dan Ossoni, and I represent Ms. Aisha Putnam, Plaintiff Appellant. In my time before the Court, I will establish, first, that the lower court erred at summary judgment where Ms. Putnam demonstrated genuine issues of material fact as to causation and employer knowledge of the FDA-protected activity. Second, that the retaliatory lawsuit brought against Ms. Putnam was improperly excluded at trial and remains unadjudicated as a matter of law as an adverse action. And third, the district court erred in instructing the jury that the plaintiff may demonstrate a materially adverse action and that the causation standard applies to termination rather than any adverse action. And finally, that the district court improperly dismissed Ms. Putnam's well-played claim for common law retaliatory discharge because the Illinois Supreme Court has determined that punitive damages are a necessary remedy to properly effectuate the public policy of Illinois per Kelsey v. Motorola. First, the district court erred at summary judgment, holding that Ms. Putnam must demonstrate actual knowledge of the FDA complaint. The district court erred in dismissing Ms. Putnam's FDA complaint theory by requiring the plaintiff to demonstrate firsthand evidence of the defendant's actual knowledge of the FDA complaint. As for the standard of review, Courtney v. Biosound, this Court determined that the summary judgment standard is to be applied with added rigor where intent and credibility issues are crucial. Nevertheless, questions for summary judgment. Excuse me. Help us with this. What is your best evidence from the record, other than suspicious timing, that any decision maker at Carmel Crisp knew about the FDA complaint before Ms. Putnam was fired? Yes, Your Honor. There are three categories of evidence that we'd like to present. First is the suspicious timing. Second is the ambiguous statements of other employees at Carmel Crisp. And third is the treatment of other members of the protected class per Hassan v. Foley Lardner. With respect to ambiguous statements, Mr. Sobel texted other employees after he was terminated that they needed to watch their back first. Second of all, the employees that were terminated on March 7th were all collectively complainers of food safety conditions. The fact that all three of all of those employees, particularly the substance of those particular employees that they were terminated, indicates knowledge that there had been a complaint made. The anonymous complaint to the FDA did not specify a particular employee that had complained. So the circumstantial evidence to create knowledge of the employers, to create genuine issues of material factors to the employer's knowledge, relates to the fact that complainers generally were all terminated on the same day. Mr. Assouni, forgive me, but you went blank for a while on my screen. So let me just ask you, because I missed the last two minutes. Was there any evidence in the record at trial in this case that Mr. Sposal spoke with any managers about the FDA complaint? Your Honor, no. And the reason is that the entire theory of the FDA complaint had been excluded from the trial prior hand. So presenting any evidence of the FDA was barred at the trial level. But counsel, I understand that you didn't seek discovery from the FDA until after the discovery caught up. So at the time of summary judgment, am I correct that there was nothing from the FDA? Because the time to have put in evidence of Mr. Sobel's conversations with anyone at Garrett would have been at that put up or shut up time, no? And so the court granted summary judgment and excluded that theory of retaliation, but allowed everything else to go forward. Yes, Your Honor. The testimony that came from Brent Sobel indicated that he spoke with other members of management about the discussions that they had had about the FDA. Where is that in the record? Because I saw a caveat in his testimony, a probably or I might have. I didn't see a definitive statement from Mr. Sobel that he spoke with management at Garrett. Yes, Your Honor. At summary judgment, the plaintiff need not prove beyond a preponderance standard or anything of that nature. She only needs to create genuine issues of material fact. And Dave versus Colt Construction Company only requires that the plaintiff demonstrate enough circumstantial evidence to support the inference. I completely hear you on that. But I don't think we have a statement from Mr. Sobel. I told management, right? It was a maybe. I might have told management doesn't seem like it's enough under. It seems speculative and not enough to survive summary judgment on that theory, unless you can point me to a case where we let this kind of speculation. Help a plaintiff at summary judgment. Your Honor, the. The issue is that the jury could determine by hearing Mr. Sobel's testimony, this is an individual who is afraid to testify or to participate in a lawsuit against the defendant. They could evaluate his credibility and upon further testimony, perhaps could indicate that he had spoken with other members of management. That sounds much like a fishing expedition. You see, what happened is that he said he probably talked to the vice president about some unidentified employee going to the FDI. But a few minutes later, he said he couldn't recall doing that. And then that was testimony that he reiterated later on in his deposition. I don't see where that could be enough evidence that a decision maker at Carmel Crisp had knowledge about the FDA complaint. Is there anything more? Yes, Your Honors. There's also the fact that the employees that were terminated the same day as Ms. Putnam were all collectively food safety complainants. Counsel, where is that in the record? Because I was very interested in this issue of this excluded testimony. And I did not find any specifics, looking myself in the record, as to who these folks complained to, what specifically they complained about, who their supervisors were. Can you point me to any evidence in the record? Yes, Your Honor. Ms. Putnam testified in her deposition. There were two sessions in the instant case. There was, of course, the trade secrets case. But in the instant case, she testified that Brent Soville complained, that Estella Martinez complained, that other members, Anthony McHeron also complained. Complained to her? To her and others. So all you have is Ms. Putnam's. Obviously, the plaintiff's testimony is evidence, but that's what you've got. You've got nothing else in the record. And these particular individuals, we anticipate that they would testify at trial and have done so in their own lawsuits against the defendant about the retaliation that they experienced in connection. But let me ask you this. Assume I agree with you on this, that it was error to exclude these. We can't, without knowing what they would have testified to, it feels like harmless error. We've got to base it in the record. So you don't have much on these other three in the record, unless I've missed something. Your Honor, I believe in the record there is filed a complaint by the other plaintiffs. So all of their allegations are there in the record. So all of the testimony that would be related to their allegations in the state court proceeding, they would presumably be testifying about those allegations here in this trial as well. So you're relying on the state court complaint? In addition to the testimony that we anticipate that they would provide regarding- Well, but then why at a pretrial conference to address the motions in limine? When the district court asked Putnam's counsel if any witness would testify that Carmel Crisp knew that Ms. Putnam had reached out to the FDI, Ms. Putnam's counsel did not identify any witnesses who would. And that is why the district court excluded evidence of Ms. Putnam's anonymous emails to the FDA. I mean, you can't not have done it below and then, you know, sort of come in here and say, well, this is, you know, what we would have done. Your Honor, we can't always be certain of exactly what it is that the employees would testify to. However, what we anticipate that they would testify about, particularly Brent Sobo, is an individual who had conversations with Ms. Putnam and other employees about these employees going to the FDA. And in his deposition testimony, he indicated that he was familiar with it, the complaint, which there's an argument in our brief to the extent that this, you know, should create genuine issues of material fact as the employer's knowledge, you know, vis-a-vis Nishan and Young. Well, at trial, Ms. Putnam couldn't identify any witness. And now, based on Mr. Sobo's testimony, or rather his deposition testimony from a different case, she is alleging that Mr. Sobo discussed the FDA complaint with other employees. And likely raised it with members of management. I mean, it's a real problem, as you can see. Your Honor, our argument is that collectively, the suspicious timing of the terminations, the suspicious timing of the termination of Ms. Putnam, the ambiguous statement from Mr. Sobo, all of these things add together collectively to an amount greater than the sum of their parts. Each one of them can be balkanized into a small or reduced argument. Mr. Esonwune, you're getting close to your rebuttal time. Do you want to address one of your three other issues you wanted to come raise? Yes, Your Honor. Second, the retaliatory trademark lawsuit remains alive today and was improperly excluded at trial. Ms. Putnam's claim for retaliation in connection with the retaliatory trade secrets case remains unresolved, unadjudicated, and alive today. From the very outset, in both the instant case as well as the trade secret case, Ms. Putnam alleged a broad retaliation theory that included the defendant's retaliatory trade secrets lawsuit brought against her. The issue of the retaliatory trade secrets lawsuit as an adverse action was never in question as between the parties. The adverse action was explored in depositions, and the settlement agreement between them with respect to the frivolous lawsuit made sure to preserve all arguments, claims, and defenses in the instant suit, as well as it was settled in exchange for zero monetary compensation. Your Honors, the defendant knew that there can be no surprise or failure to provide sufficient notice where Gerritz affirmatively and preemptively sought summary judgment on the frivolous lawsuit as an adverse action. There, the defendant presented its legal argument in its opening brief, and that the frivolous lawsuit was not an abusive process incited to case law in this district. This is critical because the party cannot deny knowledge or notice to a claim of which they have actual notice and knowledge. I'll reserve my time. Please save time for your rebuttal. You'll be sorry if you don't. I'll reserve my time. Thank you. Thank you. Thank you. We welcome to the podium Ms. Truster. Thank you. Good morning. Is it OK for me to proceed, Judge? Yes. OK. Good morning, and may it please the court. My name is Julie Truster, and I represent the defendant Eppley Carmel Crisp, doing business as Gerrit Popcorn. Mr. I'm going to start you right in on Mr. Assoni's last point, because you state that Putnam has no evidence of retaliation, but temporal proximity is classic circumstantial evidence. I realize that we have said that temporal evidence alone cannot carry the day, but we have never said that temporal proximity is not good circumstantial evidence or that there is never a case where it could carry the day. Why is this not such a case? She complains to the FDA. She's fired a few days later. We know that at least five people, Putnam and the crew at the company, knew she was going to complain to the FDA. Isn't this the kind of information that spreads quickly to the workplace? I appreciate that question. It's a wonderful question. There's a couple of things I think that are not apparent on this record. First of all, you know, you don't have any of the testimony of the witnesses and the witnesses themselves. I will tell you, Your Honor, deny these individuals, the crew, deny having had any conversations with Miss Putnam about going to the FDA. So that's piece number one. We have a record here that does not include a lot of the testimony. Piece number two is that, yes, I appreciate that timing. You know, the court has been very clear that timing, you know, is generally not enough to show, you know, an issue of fact. It's not in this case, Judge, and the reason it's not in this case is because there isn't any indication at all on this record that Carmel Crisp had any knowledge about the fact that there was an FDA complaint. What the court doesn't know, because it doesn't have the testimony and offers of proof weren't made and this issue wasn't fully developed at trial, is that, you know, the witnesses from Carmel Crisp all credibly denied any knowledge. In fact, the FDA complaint first became an issue in this case when Miss Putnam produced the emails. They were not emails that were ever, you know, produced in the course of ESI discovery in the case on behalf of Carmel Crisp. It was an email that did not identify any specific employee. It was sent from an email that was specifically designed to anonymize the sender. You know, there are numerous issues in this case, including the fact that, you know, even if Carmel Crisp did have some knowledge that there was a complaint to the FDA, there's nothing to associate that complaint to this individual. So that is also a piece that I think, you know, could be overlooked here. You know, I think, and just to go back to some of the things that Mr. Esonwune said, you know, there were, and the court, you know, pointed out that Mr. Sposal made some comments about how he might have told management. And I think, Judge Roebner, you were the one to point out that he didn't actually testify that he had told, that he had told the decision maker. And one thing I want to be clear about here is that given the state of this record, I don't think the court even knows who the decision maker was in Ms. Putnam's case. So testimony from Mr. Sposal that he made a comment to Austin Lilly is irrelevant because Austin Lilly wasn't a decision maker. But the problem is that the court doesn't have a way to kind of evaluate that based on the record that it has from this case. I will say Mr. Sposal actually did testify at trial. And again, you don't have that testimony, but you can see it in the portion of the record that includes Carmel Crisp's closing argument that there's a reference to the fact that Mr. Sposal testified. It would have been completely possible and appropriate for the plaintiff's attorneys to give and offer a proof with respect to Mr. Sposal's testimony, and that didn't happen. So, you know, normally I would, I appreciate that the goal of this court is to decide things on the merits and not simply on technicalities because the record is incomplete. But the problem here is we really have an incomplete record. And there was a lot of water under the bridge that I don't think the court has in front of it. So to answer your question, Judge Rovner, and I'm not trying to avoid it, I think that there are situations, and there may well be situations in which timing alone could create an issue of fact. But again, on this record, you know, there isn't, that issue is, it's really neither here nor there. Ms. Tester? Sure. Yeah, I want to shift you now to the court's dismissal of Ms. Putnam's Illinois common law claim. Yes. Retaliation. Yes. I did not see you or Ms. Putnam, frankly, address our decision in Brandon versus Anesthesia and Pain Management Associates Limited. It's a 2002 case of ours. And, Your Honor, you did not see that, and I'm unfortunately not prepared to address it now. Could you tell me, maybe a little bit of background? I am going to, and I'm going to ask, I believe I'm going to ask you and Mr. Esonwune to address it. Sure. In a short letter to the court. Because there we discuss the proper way to decide whether a statute is an alternative adequate remedy. Okay? And we explain that the proper way is to look at the elements of the two claims and the relief provided. And here we've got the Food Safety Modernization Act and retaliatory discharge under Illinois common law. They've got different causation standards. Okay? And the FSMA doesn't permit punitive damages, whereas they're available under Illinois common law. So you've got basic differences between these two different remedies, which would mean that the Food Safety Modernization Act, according to Brandon, is not an adequate alternative remedy. So, Judge, and I apologize, I don't want to interrupt you if there was more that you were going to. Well, I understand that you have not looked at the case, so you needn't say more. But I would like you and Mr. Esonwune to look at that. Okay. And I will, Judge. I guess, you know, my only thought would be that that argument, specifically about the scope of the relief that was available to Ms. Putnam under the FSMA versus, you know, under state law. I mean, that issue was actually raised to Judge Kokoris. It was part of the briefing. We didn't address it in the context of Brandon. But the argument, you know, was that she had, I mean, in fact, you're right, it is a different standard of causation. But I actually think the FSMA might be more permissible or permissive than the standard of proof under the Retaliatory Discharge Act. So I appreciate what you're saying, Your Honor. I can't, you know, comment on Brandon because I haven't read it. I'm not sure Ms. Putnam would agree with you about that last statement. Let me give you the citation for Brandon. Sure.  That's 277 F3rd 936. And that's our court in 2002. Okay. Thank you, Judge. I guess that obviously, you know, having, I'm going to have to eat my words in terms of, you know, understanding that the court should address issues on the merits as opposed to, you know, technicalities. But again, this is not an issue that Ms. Putnam raised. And so I would just point that out for you, Your Honor. I appreciate that you need me to address it. And you want me to do that in a letter. Why do you say it's not an issue? And then we'll move on. Ms. Putnam raised, she raised that the court erred in dismissing her common law claims. Oh, yes. What more is necessary to allege error? What I'm saying is she hasn't raised, it sounds like, and again, because I don't know Brandon, I can't say for sure. But it sounds like she did not raise that specific argument. And she did not raise Brandon. I guess that's all I'm saying. You would have been the one to raise it since it would seem to help. I apologize, Judge. I wasn't aware of it. I appreciate that I have an obligation and I should have done complete research. But again, I'm not aware of it. We can move on. Okay, great. So I'm happy to address any other questions that the court has. I will address briefly the instructional issue because I think that is an issue, obviously, that is kind of front and center. You know, I don't believe that the adverse action instruction was in any way improper. I appreciate that Muldrow changed the standard a little bit and that materially adverse, you know, at least in the context of, you know, adverse actions that are, you know, identifiable terms, you know, impact identifiable terms and conditions of employment, that the materially adverse, you know, standard doesn't apply in that situation. But we're not talking, we're talking here about things other than Ms. Putnam's discharge, even other than the bonus because those things were all, according to the judge's instruction, those things were all adverse actions. Materially adverse, whatever, it doesn't, that's irrelevant. They were adverse actions and the court instructed the jury in keeping with that. The materially adverse piece of the instruction, because of the way the instruction was worded, applied to things that did not impact her pay or, you know, her tender. And so when you look at things, you know, like the other claimed adverse actions, which include things like, you know, workplace hostility or, you know, people criticizing her or saying that she was, you know, not competent or things like that. Those things, I think, now under Muldrow, and probably even before Muldrow, would never have been sufficient to show an adverse action materially or otherwise. So my point would be that I don't think there can be any showing of prejudice from that instruction because the things that she claims were adverse actions other than the discharge and, you know, maybe the bonus, those things I don't think would ever qualify as adverse actions. So I don't, you know, I would suggest to the court that there is no prejudice based on that instruction. I think it was actually proper, but also I think there is no prejudice resulting from it. The other thing I would say to the court is with respect to the retaliatory discharge, or I'm sorry, the trade secrets lawsuit. Hold on one second. It's important to note that the complaint in this case was addressed solely to the acts of retaliation or alleged acts of retaliation that took place before the discharge and at the time of the discharge. And in fact, I think the complaint, and we included in the brief, specifically says that, you know, up to the date of termination, Carmel Crisp retaliated against her and based on the discharge. So my point is that the complaint itself doesn't raise an issue with respect to the filing of the trade secrets lawsuit as being retaliatory. And I appreciate what the plaintiff is arguing about the fact that the court, you know, that there was a settlement. But the point of it is that the settlement doesn't impact this. The settlement merely preserved her right to assert it, and it was in fact never asserted. It was not raised. And if the court looks at the pretrial order in this case, that pretrial order specifically refers to discrimination in the form of her discharge and only her discharge. There's no reference to the trade secrets lawsuit. So there are various points at this case where there was an opportunity on the part of plaintiff to raise that if she was so inclined, but she did not do that. And for that reason... Yet you still moved on the issue in summary judgment. I did judge. And I could kick myself for doing that because to be honest with you, I didn't, I truly honestly didn't expect that that was going to be a major issue. You know, I will say when Mr. Assange points out that these issues came up in the course of discovery, yes, it did in the sense of the plaintiff's damages. Because I was asking her in depositions, which you can see in the record, about, you know, whether or not what the source of her damages was. And what I wanted to establish is that the damages related to the retaliatory lawsuit, which were not part of this case, as opposed to, you know, relating to the termination, which obviously was part of this case. So, yes, I did address it. That's true. I didn't expect it to be an issue. I kind of figured that was going to be a throwaway argument. I will say that, you know, even though I addressed it, you know, again, there was never, you know, an attempt to move to amend the complaint. And when we get to trial, there's a pretrial order that says nothing about the retaliatory trade secret, allegedly retaliatory trade secrets lawsuit. So we would ask the court to affirm, in part because of the record and also because we think that there is no reversible error. Thank you. Thank you, Ms. Trestor. Mr. Sonnier, for rebuttal. Okay. A couple of points to make in rebuttal, Your Honor. First, Ms. Trestor indicated that the plaintiffs, Estella Martinez and Carmen Vaughn and Anthony McCarran, had indicated that they denied having any conversations with Ms. Putnam regarding the FDA. That is a bit of a misunderstanding. These employees are line workers. They are more familiar with the term the state, and so they were not under the impression that there was an FDA specifically. But if you ask them specifically about did you have conversations with Ms. Putnam about going to the state, they would remember those conversations, number one. And number two, the court's point regarding the branding case is well received. I also would, you know, appreciate the opportunity to expand on that in a short letter. The only thing I would add to that is that in Kelsey v. Motorola, the Illinois Supreme Court indicated that they did an analysis on whether punitive damages were to be included in the Illinois Common Law Tort. They determined that it would be. The purpose is to effectuate the public policy of Illinois, that employers would not be sufficiently deterred by only paying compensatory damages or other small nominal damages. The next thing on the adverse actions and the instructional issue, to my knowledge, I certainly do not recall any agreement between the parties with respect to their being agreed adverse actions or an instruction thereto. And finally, on the trade secrets, the defendant clearly moved for a summary judgment on the issue. They were well aware of it. Of course, the defendant now argues that the plaintiff did not raise it in her complaint. Of course, as we all know, it's no displeading. And so the fact that the defendant moved for summary judgment substantively on it as an adverse action and damages related there, too, indicates that the defendant was well apprised of the adverse action. These two cases were intimately connected and discussed as a whole. And their settlement discussions related primarily to settling one and settling two. Can we settle them together? No, we're going to leave the whistleblower case to go forward on its own. So for those reasons, we would ask that the court reverse the issues of de novo as well as abuse of discretion. All right. We thank both counsel, and we will take the case under advisement.